UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SANDRA RODRIGUEZ GOMEZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-09-CV-0294 FB (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| **Defendant.** | § | |

REPORT AND RECOMMENDATION

TO:   **Honorable Fred Biery**
      **Chief United States District Judge**

Introduction

Plaintiff Sandra Rodriguez Gomez brought this action for judicial review of the final

decision of the Commissioner of the Social Security Administration (the Commissioner),

determining that Gomez is not disabled for the purposes of the Social Security Act (the Act) and

denying Gomez's application for Supplemental Security Insurance.  Gomez asked the district

court to reverse the Commissioner's decision and to render judgment in her favor.  In the

alternative, Gomez asked the district court to reverse the decision and remand the case for further

proceedings.

After considering Gomez's brief in support of her complaint,[1] the brief in support of the

Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the

---

[1]Docket entry # 13.

[2]Docket entry # 16.

applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[3]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Gomez exhausted her administrative remedies prior to filing this action in federal court.  Gomez applied for SSI on October 4, 2004 when she lived in Lansing, Michigan, alleging disability beginning on March 15, 2004.[4]  Despite the purported on-set date, Gomez worked as a certified nursing assistant until September 19, 2004, when she was terminated after an altercation with her supervisor.[5]  Gomez sought benefits based on depression,

---

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, pp. 48-49.

[5]*Id*. at p. 51.  Five years later when Gomez filed this lawsuit, she stated that she worked until November 2004 as a housekeeper.  *See* docket entry # 1.  Either story indicates that Gomez worked several months after she alleges she became disabled.  *See also* SSA record, p. 92 (reporting to state consultative doctor that she stopped working in July 2004 for personal reasons).

high blood pressure and diabetes.[6]  The Commissioner denied the application.[7]  Gomez then

sought a hearing before an ALJ.[8]  An ALJ held a hearing on May 22, 2007.[9]  The ALJ issued a

decision on August 30, 2007, concluding that Gomez is not disabled within the meaning of the

Act.[10]  Gomez asked the Appeals Council to review the decision.[11]  On February 4, 2009, the

Appeals Council declined to review the decision, determining no reason existed for a review.[12]

The ALJ's decision became the final decision of the Commissioner for the purpose of the district

court's review pursuant to 42 U.S.C. § 405(g).  Gomez initiated this action on April 15, 2009, by

asking to proceed in forma pauperis.[13]

## Issue Presented

Is the ALJ's decision that Gomez is not under a "disability," as
defined by the Act, supported by substantial evidence and does the
decision comport with relevant legal standards?

## Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

---

[6]*Id*. at p. 50.

[7]*Id*. at pp. 28.

[8]*Id*. at p. 33.

[9]*Id*. at p. 409.

[10]*Id*. at p. 16.

[11]*Id*. at p. 14.

[12]*Id*. at p. 4.

[13]Docket entry # 1.

is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[14]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[16]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[17]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[18]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[19]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians,

---

[14]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[15]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[16]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[17]*Martinez*, 64 F.3d at 173.

[18]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[19]*Martinez*, 64 F.3d at 174.

4

(3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[20]

## 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[21]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[22]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[23]

## 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[24]  A finding that a claimant is disabled or not disabled at any

---

[20]*Id.*

[21]42 U.S.C. § 1382(a)(1) & (2).

[22]42 U.S.C. § 1382c(a)(3)(A).

[23]42 U.S.C. § 1382c(a)(3)(B).

[24]20 C.F.R. §§ 404.1520 and 416.920.

5

point in the process is conclusive and terminates the Commissioner's analysis.[25]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[26]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[27]  The second step involves determining whether the claimant's impairment is severe.[28]  If it is not severe, the claimant is deemed not disabled.[29]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[30]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[31]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[32]  If the claimant is still able to do her past work, the claimant is not disabled.[33]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities,

---

[25]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[26]20 C.F.R. §§ 404.1520 and 416.920.

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

age, education, and work experience, to do other work.[34]  If the claimant cannot do other work,

she will be found disabled.  The claimant bears the burden of proof at the first four steps of the

sequential analysis.[35]  Once the claimant has shown that she is unable to perform her previous

work, the burden shifts to the Commissioner to show that there is other substantial gainful

employment available that the claimant is not only physically able to perform, but also, taking

into account her exertional and nonexertional limitations, able to maintain for a significant period

of time.[36]  If the Commissioner adequately points to potential alternative employment, the burden

shifts back to the claimant to prove that she is unable to perform the alternative work.[37]

**B. Findings and Conclusions of the ALJ**

In this case, the ALJ reached his decision at step five of the decision-making process.  At

step one, the ALJ determined that Gomez had not engaged in substantial gainful activity since

her alleged on-set date.[38]  At step two, the ALJ determined Gomez has the following severe

impairments: diabetes mellitus, hypertension, degenerative disease of the lumbosacral spine,

status post bariatric surgery for obesity, and depression.[39]  It is unclear why the ALJ determined

that Gomez suffers from degenerative disease of the lumbosacral spine, as Gomez's medical

records do not include a diagnosis of degenerative disease and document only complaints of low

---

[34]*Id.*

[35]*Leggett*, 67 F.3d at 564.

[36]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[37]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[38]SSA record, p. 21.

[39]*Id.*

back pain.  At step three, the ALJ determined that Gomez's impairments do not meet or medically equal a listed impairment.[40]  At step four, the ALJ determined that Gomez has the residual functional capacity (RFC) to perform simple, unskilled light work with no use of ladders, scaffolds, or ropes; with no jobs involving concentration on detailed, precision, multiple, or simultaneous tasks; with no jobs requiring computing, calculating, problem-solving, or reasoning; and with no work that is more than routine and not requiring changes or adaptions in work settings or duties.[41]  The ALJ also determined that Gomez is unable to perform her past relevant work as a housekeeper, a certified nursing assistant and fast food worker.[42]  At step five, the ALJ determined that there are significant jobs existing in the national economy that Gomez can perform and concluded that Gomez is not disabled under the Act.[43]

## C.  Gomez's Allegation of Error

Gomez contends the ALJ presented a defective hypothetical question to the vocational expert, resulting in unreliable testimony.[44]  The vocational expert testified that a person with Gomez's mental RFC can work as a ticket-taker, cafeteria attendant, or parking lot attendant.[45]  Because the ALJ determined in step four that Gomez is restricted to simple jobs, Gomez maintains a step-five determination based on this testimony is unsupported by substantial

---

[40]*Id*. at p. 23.

[41]*Id*.

[42]*Id*. at p. 24.

[43]*Id*.

[44]Docket entry # 13, p. 7.

[45]SSA record, p. 435.

evidence because working as a ticket-taker, cafeteria attendant, or parking lot attendant requires a higher level of reasoning than indicated by her mental RFC.  Because the Dictionary of Occupational Titles (DOT) describes the jobs of ticket-taker, cafeteria attendant, and parking lot attendant, as requiring the ability to carry out detailed instructions, and because she has the ability to carry out simple instructions, Gomez argues that the ALJ made a determination beyond her mental capacity.

      <u>Whether the hypothetical question was proper</u>.  "[O]nce the ALJ determines that a claimant suffers from a nonexertional impairment that prevents her from performing her past work and the full range of other available work, the [Commissioner] must produce 'expert vocational testimony or other similar evidence' to establish that jobs exist in the national economy that the applicant can perform."[46]  The Commissioner can obtain such evidence by questioning a vocational expert, using a hypothetical question incorporating the claimant's RFC. A proper hypothetical question posed to a vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ.[47]

      The ALJ's hypothetical question in this case follows:

> I'd like you to assume a hypothetical individual who could meet the demands of light work who should never use ladders, scaffolds or ropes.  Should only do simple, un-skilled work with an SVP of one or two.  Should have work involving

---

[46]*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[47]*See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.").

9

> only one, two or three step instructions.  Should have no jobs requiring
> concentration on detail or precision task[s] or multiple simultaneous tasks.
> Should have no jobs that would require the individual to compute, problem solve
> or reason and should have jobs that would only require changes or adaptations in
> work settings or duties once a month at the maximum.  Could such an individual
> do Claimant's past work?[48]

Gomez argued that this question is defective because the ALJ's step-four determined indicates

she lacks the capacity to complete three-step work.  Gomez maintains that the ALJ's step-four

determination that she can perform simple work restricts her to one or two step work.  Thus, she

argued that the ALJ's hypothetical question is defective because the ALJ asked about three-step

work. [49]  Gomez based her argument on the DOT's descriptions of a ticket-taker, cafeteria

attendant, and parking lot attendant.  The DOT describes the jobs as requiring reasoning level

two.  According to the DOT, reasoning level two requires the ability to "[a]pply commonsense

understanding to carry-out detailed but uninvolved written or oral instructions," as compared to

reasoning level one which requires the ability to "[a]pply commonsense understanding to carry

out simple one-or-two step instructions."  Gomez insists that a determination in step four that she

can perform simple jobs necessarily rules out the ability to perform a three-step job.

The claimant-appellant in *Meissl v. Barnhart* made a similar argument.  In rejecting the

argument, the district court reasoned as follows:

> The Social Security regulations separate a claimant's ability to understand and
> remember things and to concentrate into just two categories: "short and simple
> instructions" and "detailed" or "complex" instructions.  The DOT, on the other
> hand, employs a much more graduated, measured and finely tuned scale starting
> from the most mundane ("simple one- or two-step instructions" at level one),
> moving up to the most complex ("applying principles of logical or scientific

---

[48]SSA record, pp. 434-35.

[49]Docket entry # 13, p. 8.

thinking . . . apprehend the most abstruse classes of concepts" at level six).  To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail."  Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.[50]

As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine.  For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables."  In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables . . . ."[51]

As in *Meissl*, the "middle ground between these two points is . . . where the vocational expert identified a job with the lowest reasoning development score that [the claimant can] perform;"[52] here, a ticket-taker, cafeteria attendant, or parking lot attendant.  The ALJ's hypothetical question was proper because it incorporated Gomez's limitations by asking about a person who can perform work involving only one, two or three step instructions;[53] work that did not require concentration on detailed or precision tasks or multiple simultaneous tasks;[54] work that did not

---

[50]*Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005).

[51]*Id*. at p. 983.

[52]*Id*.

[53]This aspect of the question incorporated Gomez's moderate limitation in the ability to understand, remember, and carry out detailed instructions.

[54]This aspect of the question incorporated Gomez's moderate restriction in the ability to maintain attention and concentration for extended periods.

require computations, problem-solving or reasoning;[55] and requiring no more than monthly changes or adaptations in the work setting.[56]

    <u>Whether substantial evidence supports the step-five determination</u>.  The ALJ based the step-five determination on the vocational expert's testimony.

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . .  [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants [are] not . . . permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.[57]

The record in this case reflects an adequate basis for relying on the vocational expert's testimony. Gomez suggested she cannot perform beyond reasoning level one, but the record indicates Gomez operates at a higher level of reasoning than level one.  Previously, Gomez worked as a certified nursing assistant.  The DOT describes that job as requiring reasoning level three.[58]  The record does not reflect that Gomez lost the reasoning capacity for that job.  Gomez testified that she can read the daily newspaper, the Lansing State Journal.[59]  This testimony indicates Gomez

---

[55]This aspect of the question incorporated Gomez's moderate limitation in the ability to understand, remember, and carry out detailed instructions.

[56]This aspect of the question incorporated Gomez's moderate limitation in the ability to respond appropriately to changes in the work setting.

[57]*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

[58]DOT 355.674-014.

[59]SSA record, p. 425.

can at least read three-step instructions.  Gomez reported to the state consultative therapist that she knows how to use a checking account to pay bills.[60]  Using a checking account requires at least three steps: entering a payment amount, subtracting the payment amount from the account balance, and periodically reconciling the account balance.

The record contains no evidence suggesting problems with reasoning.  Gomez's treating physician routinely observed that Gomez's cognition and judgment were intact.[61]  Gomez testified that she saw a therapist for depression and temper,[62] but the record contains no mental health records.  The record contains only prescriptions for psychotropic drugs for treating depression and attention deficit disorder.

The state medical consultant opined that Gomez was moderately limited in the abilities to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; and (4) respond appropriately to changes in the work setting.[63]  This opinion does not suggest that Gomez cannot perform work involving three steps.

To the extent that Gomez relies on Judge Rodriguez's order in *Baty v. Barnhart*, that determination does not control this case.  In *Baty*, Judge Rodriguez found a "direct, explicit conflict between the [VE's] testimony and the DOT that was discussed, albeit briefly, at the

---

[60]*Id*. at p. 85.

[61]*See e.g.*, SSA record, pp. 221, 242, 268, 302, 317 & 327.

[62]*Id*. at 429-30.

[63]*Id*. at pp. 117-18.  *See also* id. at p. 130.

hearing before the ALJ."[64]  Here, there is no direct, explicit conflict and no conflict was discussed at the hearing.  Moreover, no medical professional rendered an opinion suggesting that Gomez cannot reason beyond level one.  The vocational expert reviewed the medical consultant's mental RFC before the hearing.[65]  The vocational expert was aware of Gomez's limitations when she testified that a person with Gomez's RFC can work as a ticket-taker, cafeteria attendant, or parking lot attendant.  Gomez has simply scanned the record for an implied or unexplained conflict with the DOT, seized upon a single word in the ALJ's hypothetical question, and presented a purported conflict as reversible error.  To the extent she now believes a conflict exists, she did not deem it sufficient to merit adversarial development in the administrative hearing.  There is no need to remand this case—the ALJ applied the proper standards and considered the entire record.  All the evidence supports the step-five determination.

**Recommendation**.  The ALJ's hypothetical question to the vocational expert was not defective.  Substantial evidence supports the ALJ's step-five determination.  For these reasons, I recommend denying Gomez's application for relief and affirming the Commissioner's decision.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days

---

[64]*Baty v. Barnhart*, 512 F. Supp. 2d 881, 893 (W.D. Tex. 2007).

[65]SSA record, p. 432.

14

after being served with a copy of same, unless this time period is modified by the district court.[66]

Such party shall file the objections with the clerk of the court, and serve the objections on all

other parties and the magistrate judge.  A party filing objections must specifically identify those

findings, conclusions or recommendations to which objections are being made and the basis for

such objections; the district court need not consider frivolous, conclusive or general objections.

A party's failure to file written objections to the proposed findings, conclusions and

recommendations contained in this report shall bar the party from a *de novo* determination by the

district court.[67]   Additionally, failure to file timely written objections to the proposed findings,

conclusions and recommendations contained in this report and recommendation shall bar the

aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.[68]

      **SIGNED** on July 30, 2010.


                              *Nancy Stein Nowak*

                              NANCY STEIN NOWAK
                              UNITED STATES MAGISTRATE JUDGE

---

[66]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[67]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[68]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).